# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARIA D. MALDONADO, and<br>LAURA A. DAY, on behalf of themselves<br>and all others similarly situated, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Case No. 1:20-cv-05599-NLH-KMW |
| v. | : | |
| | : | |
| MARINA DISTRICT DEVELOPMENT<br>COMPANY, LLC d/b/a BORGATA HOTEL<br>CASINO & SPA, and MGM NATIONAL<br>HARBOR, LLC | : | |
| | : | |
| Defendants. | : | |
| | : | |

**<u>CLASS ACTION SETTLEMENT AGREEMENT</u>**

This Class Action Settlement Agreement (the "Agreement") is made and entered into by and between Plaintiffs Maria D. Maldonado ("Maldonado") and Laura A. Day ("Day") (hereinafter referred to collectively as the "Named Plaintiffs") and all members of the Settlement Classes (defined below), on the one hand, and Defendants Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa ("Borgata"), and MGM National Harbor, LLC ("MGM National Harbor") on the other hand (collectively, the "Defendants"), to resolve all claims and disputes which are the subject of the lawsuit filed by Named Plaintiffs with the U.S. District Court for the District of New Jersey, *Maldonado, et al. v. Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa, et al.*, No. 1:20-CV-05599-NLH-KMW, as amended pursuant to this Agreement (the "Litigation"), and the lawsuit identified in Paragraph 50, below.  Named Plaintiffs and Defendants are referred to herein collectively as the "Parties" and each individually as a "Party."

## RECITALS

WHEREAS, solely for purposes of the settlement under this Agreement, Madonado and Borgata are conditionally stipulating to the filing of the Second Amended Class and Collective Action Complaint attached hereto as **Exhibit D** in this Litigation, adding Day as one of the Named Plaintiffs on behalf of themselves and others similarly situated, and adding MGM National Harbor as one of the Defendants, which alleges that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), the New Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq.*, the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl., §§ 3-501, *et seq.*, by failing to properly inform their tipped employees of the required tip

4880-7664-1537.1

credit provisions prior to paying them a sub-minimum direct cash wage;

WHEREAS, Named Plaintiffs have sought the recovery of, among other things, minimum wages, overtime wages, straight-time wages, liquidated damages, attorneys' fees, and costs;

WHEREAS, Defendants deny and continue to deny all of the allegations made by Named Plaintiffs, and deny and continue to deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action alleged, or that any claims asserted by Named Plaintiffs may proceed on a class or collective action basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, including that any claims alleged may proceed on a class or collective action basis, Defendants have agreed to settle the claims on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against the Litigation;

WHEREAS, Class Counsel (as defined below) has interviewed Named Plaintiffs and other members of the Settlement Classes and reviewed and analyzed documents and data produced by Defendants;

WHEREAS, Class Counsel has analyzed and evaluated the merits of the claims made against Defendants, and the impact of this Agreement on Named Plaintiffs and the Settlement Classes;

WHEREAS, based upon their analysis and their evaluation of the relevant factors, and recognizing the substantial risks of litigation with respect to certain claims, including the possibility that any litigation might result in a recovery that is less favorable to the Settlement Classes, and that would not occur for several years, or at all, Class Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Settlement Classes;

WHEREAS, the Parties recognize that the outcome in the Litigation is uncertain and that achieving a final result through the litigation process would require substantial additional risk, discovery, time, and expense;

WHEREAS, the Parties desire to settle fully and finally the differences between them and have agreed to settle this case as to Named Plaintiffs as well as all individuals comprising the Settlement Classes, as defined below; and

WHEREAS, the Parties agree to undertake their best efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of this Agreement.

NOW, THEREFORE, in consideration of the mutual promises herein contained and other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree, subject to approval of the Court, as follows:

## <u>DEFINITIONS</u>

1.      **"Agreement."** "Agreement" means this agreement, *i.e.*, the Class Action Settlement Agreement, together with all of its attachments and exhibits, which the Parties understand and agree sets forth all material terms and conditions of the settlement between them, and which is subject to Court approval.  It is understood and agreed that the obligations of Defendants for payment under this Agreement are conditioned on, *inter alia*, the occurrence of the Effective Date.

2.      **"Class Counsel" or "Plaintiffs' Counsel."** "Class Counsel" or "Plaintiffs' Counsel" shall mean George A. Hanson and Alexander T. Ricke of Stueve Siegel Hanson LLP, Ryan L. McClelland and Michael J. Rahmberg of McClelland Law Firm, P.C. R., and Andrew Santillo of Winebrake & Santillo, LLC,

3.      **"Class Employees."** "Class Employees" means the combined group of individuals in the Borgata Class and MGM National Harbor Class.

4.      **"Class Member" or "Settlement Class."** "Class Member" or "Settlement Class" means Named Plaintiffs and all Class Employees who do not opt out of the Settlement by submitting Opt Outs pursuant to Paragraph 67, and thus means all individuals who will become bound by the Released State Claims portion of the Judgment if the Effective Date occurs.

5.      **"Class Representatives."** "Class Representatives" means Named Plaintiffs Maria D. Maldonado and Laura A. Day.

6.      **"Complaint."** "Complaint" means the Second Amended Class and Collective Action Complaint, to be filed by Named Plaintiffs in the Litigation.  *See* Exhibit D.

7.      **"Counsel for Defendants" or "Defense Counsel."** "Counsel for Defendants" or "Defense Counsel" shall mean Matthew C. Kane of Baker & Hostetler LLP as counsel for MGM National Harbor, and Russell L. Lichtenstein of Cooper Levenson, P.A. as counsel for Borgata.

8.      **"Court."** "Court" refers to the Court having jurisdiction over the Litigation, at any stage; presently the U.S. District Court for the District of New Jersey.

9.      **"Defendants."** "Defendants" shall mean the Defendants in the Litigation, Marina District Development, LLC d/b/a Borgata Hotel Casino & Spa, and MGM National Harbor, LLC.

10.     **"Effective Date."** "Effective Date" means the date on which the Judgment becomes a Final Judgment.

11.     **"Employer Payroll Taxes."** "Employer Payroll Taxes" means all taxes and withholdings an employer is required to make arising out of or based upon the payment of employment/wage compensation in this Litigation.

12.     **"Final Approval."** "Final Approval" means the date the Court enters the Final Approval Order.

13.     **"Final Approval Order."** "Final Approval Order" means an order that grants final approval of this Agreement; grants final certification of the Settlement Classes for settlement purposes only; authorizes payments to Named Plaintiffs, the Settlement Classes as provided in this Agreement; fully and finally extinguishes (i) the Released State Claims of the Settlement Class and (ii) the Released Federal Claims of the Settlement Class upon Class Members' negotiation of their Settlement Checks or remittance of the amount thereof to the applicable state unclaimed property fund for the benefit of the Class Member at issue, as set forth herein; and dismissing the Litigation against Defendants with prejudice, while still retaining continuing jurisdiction over the administration of the settlement.  Named Plaintiffs shall submit a draft Final Approval Order substantially in the form attached hereto as **Exhibit C**, for the Court's review and approval.

14.     **"Final Judgment."** "Final Judgment" means the latest of: (i) the final affirmance on an appeal of the Judgment, or the expiration of time for a petition for a writ of certiorari to review the Judgment and, if certiorari is granted, the final affirmance of the Judgment following review pursuant to that grant; (ii) the final dismissal with prejudice of the last pending appeal from the Judgment or the final dismissal of any proceeding on certiorari to review the Judgment; or (iii) if no appeal is filed, the expiration of the time for the filing or noticing of any form of appeal from the Judgment.

15.     **"Final Settlement Approval Hearing."** "Final Settlement Approval Hearing" means a hearing set by the Court to take place at least thirty (30) days after the Opt Out Response Deadline, for the purpose of (i) determining the fairness, adequacy, and reasonableness of the Agreement terms and associated settlement pursuant to class action procedures and requirements;

(ii) approving Class Counsel's attorneys' fees and costs; (iii) approving the Named Plaintiffs' Service Payments; and (iv) entering Judgment.

16.    **"Judgment."** "Judgment" means the judgment on the Final Approval Order to be rendered by the Court pursuant to this Agreement.

17.    **"Maximum Settlement Fund."** "Maximum Settlement Fund" means $12,500,000, which is the maximum amount that Defendants have agreed to pay to fully resolve and settle this Litigation, including any claim for attorneys' fees and litigation costs approved by the Court; any and all amounts to be paid to Class Members; the Settlement Administration Costs; any Court-approved Service Payments; the Reserve Fund; and the Parties' respective payroll taxes, including the Employer Payroll Taxes.  Defendants will not be required to pay under this Agreement any more than the gross total amount of $12,500,000 as allocated to each of them under this Agreement.

18.    **"Named Plaintiffs."** "Named Plaintiffs" means Maria D. Maldonado and Laura A. Day.

19.    **"Net Settlement Amount."** "Net Settlement Amount" means the Maximum Settlement Fund less Class Counsel's attorneys' fees and costs, the Service Payments, the Settlement Administration Costs, the Estimated Employer Payroll Taxes, and the Reserve Fund.

20.    **"Notice Materials."** "Notice Materials" means the Proposed Settlement Notice.

21.    **"Opt Out" or "Opt Outs."** "Opt Out" or "Opt Outs" means written and signed requests by Class Employees to be excluded from the Settlement Class, which are to be submitted in the manner and within the time set forth in the Proposed Settlement Notice.

22.    **"Opt Out Response Deadline."** "Opt Out Response Deadline" means the later of the date forty-five (45) days from the date the Settlement Administrator first mails the Proposed

Settlement Notice to Class Employees, or thirty (30) days from the date the Settlement Administrator mails the Proposed Settlement Notice to a Class Employee's additional address, provided that under no circumstances will the Opt Out Response Deadline be more than seventy-five (75) days from date the Settlement Administrator first mails the Proposed Settlement Notice to Class Employees.

23.     **"Participation Deadline."** "Participation Deadline" means the date one hundred and twenty (120) days from the date the Settlement Administrator mails the Settlement Checks to the Class Members.

24.     **"Parties**." "Parties" shall refer to the Named Plaintiffs and Defendants.

25.     **"Preliminary Approval."** "Preliminary Approval" means the date on which the Court preliminarily approves the terms of this Agreement and certifies the two Settlement Classes for settlement purposes only, as provided in Paragraphs 36-38.

26.     **"Preliminary Approval Order."** "Preliminary Approval Order" means an order to be executed and filed by the Court preliminarily approving the terms contained in this Agreement and certifying the Settlement Classes for settlement purposes only as provided in Paragraphs 36-38.  Named Plaintiffs shall submit a draft Preliminary Approval Order substantially in the form attached hereto as **Exhibit B**, for the Court's review and approval.

27.     **"Proposed Settlement Notice."** "Proposed Settlement Notice" means the Notice Regarding Proposed Settlement of Class Action to be sent to Class Employees after the Court grants Preliminary Approval of the Agreement, substantially in the form attached to this Agreement as Exhibit A.

28.     **"Released State Claims."** "Released State Claims" means any and all state wage and hour claims that were or could have been asserted based on the facts and/or legal theories

alleged in the Second Amended Complaint, including, for any type of alleged unpaid minimum or overtime wages.  The Released State Claims include all compensatory damages, interest and liquidated or punitive damages based on said claims, and are intended to include all claims described or identified herein through the date of Final Approval.

29.     **"Released Federal Claims."** "Released Federal Claims" means any and all federal wage and hour claims that were or could have been asserted based on the facts and/or legal theories alleged in the Second Amended Complaint, including, for any type of alleged unpaid minimum or overtime wages.  The Released Federal Claims include compensatory damages, interest and liquidated or punitive damages based on said claims, and are intended to include all claims described or identified herein through the date of Final Approval.  The Releases defined in Paragraphs 36 and 37 do not apply to any rights or claims that may arise after the date of Final Approval; nor shall any provision in this Agreement be interpreted to waive or extinguish any benefit, rights, claims, or causes of action which may not be infringed, limited, waived, released or extinguished by private agreement with Court approval and/or as a result of any applicable law, statute, or ordinance, including, but not limited to, (a) Class Members' rights to file a charge with the Equal Employment Opportunity Commission ("EEOC") or any similar state or local agency and to participate in an administrative investigation or proceeding conducted by the EEOC or any such agency, or (b) ERISA claims that cannot be released by law or agreement.

30.     **"Released Parties."** "Released Parties" means Defendants and their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents (including MGM Resorts, Inc.), predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators,

fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

31.    **"Reserve Fund."** "Reserve Fund" means a fund in the amount of $5,000, allocated from the Maximum Settlement Fund, that the Settlement Administrator may use, with approval from Defendants and Plaintiffs, to make payments to Class Employees who dispute their Settlement Check allocation amounts, to individuals who were not identified as Class Employees but have a good faith claim for participation in this settlement, or for any other reasonable purpose necessary to effectuate the settlement.

32.    **"Service Payments."** "Service Payments" means the amounts approved by the Court to be paid to Named Plaintiffs as described in Paragraph 54, in addition to any Settlement Check they receive as a Class Member, in recognition of their efforts in coming forward as the Named Plaintiffs, assisting in the prosecution of the Litigation, or otherwise benefiting the Settlement Classes.

33.    **"Settlement Administrator."** "Settlement Administrator" refers to the third party administrator selected by the Parties after a competitive bidding process.

34.    **"Settlement Administration Costs."** "Settlement Administration Costs" means the fees and costs incurred by the Settlement Administrator in administering the settlement as described in this Agreement.

35.    **"Settlement Checks."** "Settlement Checks" means the check sent to each Class Member for his or her proportionate share of the Net Settlement Amount.

36.     **"Borgata Class."** "Borgata Class" means all tipped employees working as a Dealer at Borgata earning a direct cash wage of $7.24 or less per hour between March 1, 2018 and December 31, 2019.

37.     **"MGM National Harbor Class."** "MGM National Harbor Class" means all tipped employees working as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less per hour between January 15, 2018 and December 31, 2019.

## CERTIFICATION OF THE SETTLEMENT CLASSES
## FOR PURPOSES OF SETTLEMENT ONLY

38.     These stipulations are made solely for purposes of this Agreement. The Parties agree that the stipulations and the terms of this Agreement are in no way an admission that class or collective action certification, including conditional collective action certification, would be proper in this Litigation, and neither the existence nor the terms of this Agreement or the stipulations will be admissible in this or any other action or proceeding as evidence that (i) a determination or admission that any group of similarly situated employees exists to maintain a class action under Rule 23 of the Federal Rules of Civil Procedure (or comparable state laws or rules) or collective action under the FLSA; (ii) an adjudication of the merits of the Litigation; (iii) Defendants are liable to Named Plaintiffs or Class Employees; or (iv) an adjudication of any other matters released in this Agreement.

## PAYMENTS, SETTLEMENT FUND, AND ALLOCATION

39.     The Net Settlement Amount shall be allocated as follows: 12% to the Borgata Class and 88% to the MGM National Harbor Class.  This allocation approximates the proportional damages attributable to each group.  Each Class Member's estimated share of the Net Settlement Amount will be calculated by the Settlement Administrator as follows:

a. Each Borgata Class member's estimated share of the Borgata Class payment shall be calculated *pro rata* by comparing the number of hours that the Borgata Class member worked as a Dealer at Borgata earning a direct cash wage of $7.24 or less between March 1, 2018 and December 31, 2019 against the total amount of such hours that all Borgata Class members worked between March 1, 2018 and December 31, 2019.

b. Each MGM National Harbor Class member's estimated share of the MGM National Harbor Class payment shall be calculated *pro rata* by comparing the number of hours that the MGM National Harbor Class member worked as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less between January 15, 2018 and December 31, 2019 against the total amount of such hours that all MGM National Harbor Class members worked between January 15, 2018 and December 31, 2019.

40. Class Employees may elect to "opt out" of the Settlement Class and thus exclude themselves from the Litigation, the Settlement, and the Settlement Class. Class Employees who wish to exercise this option must comply with the instructions in the Proposed Settlement Notice attached hereto as **Exhibit A**, which is incorporated herein by this reference as though set forth in full. If the required written notification of exercising the right to opt out is not received by the Settlement Administrator from a Class Employee and postmarked on or before the Opt Out Response Deadline, then that Class Employee will be deemed to (a) have forever waived his or her right to opt out of the Settlement Class; (b) have become a member of the Settlement Class; and (c) have forever released the Released State Claims against the Released Parties.

41. Class Employees who timely and properly exercise their right to opt out shall have no further role in the Litigation and/or the lawsuit identified in Paragraph 50, and for all purposes shall be regarded as if they never were either a party to this Litigation or the lawsuit identified in

- 12 -

4880-7664-1537.1

Paragraph 50 or a Class Member, and thus they shall not be entitled to any benefit as a result of the Litigation, the lawsuit identified in Paragraph 50, this Agreement and the settlement that it evidences, nor will they have released any claims they may have against the Released Parties. In the event that over 5% of the Class Employees in the Borgata Class and/or over 5% of the Class Employees in the MGM National Harbor Class exercise their right to opt out of the settlement under this Agreement, then Defendants, or either of them, will have the right to revoke this agreement with will render it void ab initio, the Parties will revert back to their pre-settlement positions in the Lawsuit, and Defendants shall have no obligation to make any payments under this Agreement, except for costs already incurred by the Settlement Administrator. The Settlement Administrator shall notify the Parties if the 5% threshold is exceeded, and Defendants' right to revoke must be exercised within seven (7) calendar days thereafter.

42.     Class Employees who do not opt out of the Settlement Class pursuant to Paragraph 40, i.e., Class Members, may object to the Agreement by submitting written objections to the Court and mailing copies of their written objection so that they are received by the Settlement Administrator and are postmarked no later than the Opt Out Response Deadline. Any objections must be timely submitted as required in this Paragraph or else they will be waived. The Proposed Settlement Notice shall advise Class Members of how to exercise this option. The Settlement Administrator shall immediately provide copies of any such objections to Class Counsel and Counsel for Defendants.

## SERVICE PAYMENTS TO NAMED PLAINTIFFS

43.     The Service Payments to Named Plaintiffs shall not exceed the total amount of $7,500 to each of the Named Plaintiffs, for a maximum of $15,000 combined. The Service Payments are being sought in recognition of Named Plaintiffs' efforts to pursue the claims raised

4880-7664-1537.1

in this Litigation on behalf of the Settlement Classes, including assisting Class Counsel with the prosecution of this Litigation.

44.     Defendants will not oppose Named Plaintiffs' request for the Service Payments. In the event that the Court does not approve the amount of the Service Payments to Named Plaintiffs, the settlement will proceed. This Agreement is not contingent upon the Court's approval of the request for the Service Payments in any amount. This Agreement will be deemed to have been modified to reflect any amounts that are approved by the Court.  Any amounts allocated as Service Payments for the Named Plaintiffs under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount.

## PAYMENT OF ATTORNEYS' FEES AND COSTS

45.     Class Counsel will apply to the Court for approval of attorneys' fees not to exceed thirty-five percent (35%) of the Maximum Settlement Fund, or $4,375,000, and costs not to exceed $25,000.  Defendants will not oppose such application.  In the event that the Court does not approve the amount of the requested attorneys' fees or costs, the settlement will proceed. This Agreement is not contingent upon the Court's approval of the requested attorneys' fees or costs in any amount and will be deemed to have been modified to reflect the amount(s) approved by the Court. Any amounts allocated as attorney's fees or costs under this Agreement, but not approved by the Court, shall be added to the Net Settlement Amount.

## RELEASE

46.     Upon the Effective Date and after Defendants have paid the Maximum Settlement Fund to the Qualified Settlement Fund ("QSF") pursuant to Paragraph 69, Named Plaintiffs and each of the Class Members, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys, shall be deemed to have, and by operation of the Judgment shall

have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released State Claims they have, had or may have against the Released Parties, and each of them.

47.     Further, upon the date(s) that Class Members negotiate their Settlement Checks or the amount thereof is claimed from the appliable state unclaimed property fund for the benefit of the Class Member as provided in Paragraph 66, below, they shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever released, dismissed with prejudice, relinquished, and discharged all Released Federal Claims they have, had or may have against the Released Parties, and each of them, on behalf of themselves and each of their heirs, representatives, successors, assigns, and attorneys,.

## THE SETTLEMENT PROCESS

48.     As soon as practicable after the execution of this Agreement, and without undue delay after filing the consolidated Complaint, Plaintiffs will seek the Court's Preliminary Approval of the terms of this Agreement and, upon Final Approval, to seek the Court's dismissal of the Litigation with prejudice, on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement, to the extent allowed by law.  Defendants will not oppose either motion as long as they are consistent with the terms of this Agreement.  At least three days before the filing of such approval motions, Plaintiffs will provide drafts of all papers supporting the same for review and comments.

49.     As part of Named Plaintiffs' seeking the Court's Preliminary Approval of the terms of this Agreement, Plaintiffs shall also seek leave file, solely for purposes of effectuating the settlement pursuant to this Agreement, the consolidated Second Amended Class and Collective Action Complaint attached hereto as **Exhibit D**, which (a) adds Laura A. Day as a Named Plaintiff,

(b) adds MGM National Harbor, LLC as an individually named defendant, (c) specifically does not name MGM Resorts International, which will be dismissed without prejudice upon such leave being granted to file the Second Amended Complaint, and (d) pleads an FLSA tip credit notice claim covering both the Borgata and MGM National Harbor properties as well as analogous Rule 23 claims under Maryland and New Jersey state laws for each respective property.  In the event that the Effective Date does not occur, the Second Amended Complaint will be deemed withdrawn without prejudice, stricken and void ab initio, without the need for further order of the Court, and no Party shall argue in the Litigation, or any other action, that Defendants' consent to the filing of the Second Amended Complaint has any bearing on the merits of the same. The Parties hereby stipulate and agree that Defendants shall not be required to file a responsive pleading in response to the Second Amended Complaint.

50.     Upon leave to file the Second Amended Complaint being granted, the related action pending in the United States District Court for the District of Maryland, *Day v. MGM National Harbor, LLC,* Case No. 8:21-cv-00124, will be dismissed by Day without prejudice.  In the event the Effective Date does not occur and upon the refiling of the Complaint in the *Day* matter, the Parties agree that the refiled *Day* Complaint will relate back to the filing of the original *Day* Complaint for purposes of the statute of limitations.  The intent of this provision is to place the parties in the same position they were in at the time of settlement if the Effective Date does not occur.

51.     The Parties shall provide to the Court for review and approval this Agreement, with exhibits, including (a) the proposed Preliminary Approval Order in substantially the form attached as **Exhibit B**; (b) the Notice Materials, attached as **Exhibit A**; and such other information as the Court may request.

4880-7664-1537.1

52.     The Parties shall cooperate and take all reasonably necessary steps to effectuate judicial approval of the Agreement. Should the Court not approve the Agreement, the Parties will retain all rights and defenses in the Litigation, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible. In such an event, the Parties agree in good faith to attempt to negotiate about appropriate revisions and re-submit for the Court's approval. In the event such negotiations are unsuccessful and/or this settlement never receives final approval by the Court, the Parties will retain all rights and defenses in the Litigation, this Agreement will be deemed void ab initio, and all negotiations and information and materials pertaining in any way to this Agreement or the settlement of the Litigation will be inadmissible.

53.     Within ten (10) days following Named Plaintiffs' filing of their Motion for Preliminary Approval of this Agreement with the Court, Defendants shall serve a notice of the proposed settlement in compliance with the requirements of the Class Action Fairness Act, 28 U.S.C. § 1715 ("CAFA").

54.     The Court shall set the Final Settlement Approval Hearing at least thirty (30) days after the Opt Out Response Deadline and otherwise as required under CAFA. Prior to the Final Settlement Approval Hearing, Named Plaintiffs will move the Court for entry of the Final Approval Order and the associated Judgment. The Parties shall make all reasonable efforts to secure entry of the Final Approval Order and the associated Judgment. If the Court rejects their request or fails to enter the Judgment, this Agreement shall be void *ab initio*, and Defendants shall have no obligation to make any payments under the Agreement, except for costs already incurred by the Settlement Administrator, which shall be borne equally by Class Counsel and Named Plaintiffs, on one hand, and Defendants, on the other hand. At the time the motion is filed

requesting Final Approval, Named Plaintiffs and Class Counsel also shall make an application for attorneys' fees and costs and the Service Payments in accordance with the terms of this Agreement. Notwithstanding any order entered on Named Plaintiffs' and Class Counsel's application for awards to them, under no circumstance shall Defendants be required to pay any such awards absent occurrence of the Effective Date.

## SETTLEMENT ADMINISTRATION

55.     If the Court grants Preliminary Approval of this Agreement, the settlement will be administered by the Settlement Administrator. Reasonable fees and expenses of the Settlement Administrator shall be paid from the Maximum Settlement Fund.

56.     In no circumstances will any administration of the settlement, including issuance of the Notice Materials, occur unless and until the Court grants Preliminary Approval as set forth in Paragraph 59. The Parties agree to the following procedure for administration of the settlement:

a.     Within thirty (30) days after Preliminary Approval, Defendants shall provide the following information about each of the Class Employees in the Borgata Class and the MGM National Harbor Class, respectively, to the Settlement Administrator in an electronic format: (1) first and last name; (2) last known home address as reflected in Defendant's personnel records; (3) last known telephone number as reflected in Defendant's personnel records, if any; (4) Social Security Number; (5) hire dates of record with Defendant; (6) termination dates of record with Defendant, if applicable; and (7) number of hours worked as a Dealer during the applicable class period based on Defendant's records (the "Class Lists"). The Class Lists provided to the Settlement Administrator shall be used only by the Settlement Administrator and only for purposes of administering the settlement as provided in this Agreement, and the Settlement Administrator shall not disclose the contents thereof except as expressly permitted under this Agreement. Within

5 calendar days of calculating the Class Employees' individual settlement payment amounts, the Settlement Administrator will provide to Class Counsel and counsel for Defendants a list for each of the classes that includes only the following:  (a) employee last name, (b) first letter of employee first name, (c) employee identification number as provided by Defendant to the Settlement Administrator; and (d) the amount of the calculated individual settlement payment for each such Class Employee.  The restrictions on the use and disclosure of the Class List set forth in this Agreement shall be deemed, upon entry of the Preliminary Approval Order, to be a protective order entered by the Court subject to full enforcement by the Parties and the Court, and by taking on the administration of the Settlement, the Settlement Administrator agrees that it and its employees, agents and representatives are bound by such protective order.

   b.   Upon receipt of the Class Lists, the Settlement Administrator shall make reasonable efforts to obtain valid, current addresses for Class Employees, including validating such information provided by Defendants through the national change of address database or other third-party change of address databases prior to sending the Notice Materials and thereafter as needed.

   c.   Upon receipt of the Class Lists, the Settlement Administrator shall calculate the amount of the Settlement Checks for each Class Employee in accordance with Paragraph 48.

   57.   Within fourteen (14) days of receiving the Class Lists, the Settlement Administrator shall issue the Proposed Settlement Notice, as approved by the Court, in substantially the form attached hereto and made a part of this Settlement Agreement as **Exhibit A** to all Class Employees. The Proposed Settlement Notice shall inform Class Employees of their right to opt-out of the settlement, object to the settlement, or participate in the settlement, and the approximate amount they are entitled to receive if they participate.  If the Proposed Settlement Notice sent to a Class

4880-7664-1537.1

Employees is returned as undeliverable, the Settlement Administrator shall promptly undertake reasonable steps including performing a skip trace to determine the Class Employee's current address and, if an additional address is located, to send the Proposed Settlement Notice to the additional address.

58.     Class Employees shall have a deadline of forty-five (45) days from the date the Proposed Settlement Notice is first mailed to opt out of the settlement by fully complying with the requirements for doing so as set forth in the Proposed Settlement Notice attached hereto as **Exhibit A** ("Opt Out Response Deadline"). If the Settlement Notice sent to an Class Employee is returned as undeliverable, but the Settlement Administrator locates an additional address for the Class Employee and thereafter sends the Proposed Settlement Notice to that additional address, then that Class Employee shall have a deadline of the earlier of thirty (30) days from the date the Proposed Settlement Notice was mailed to the additional address to opt out of the settlement or seventy five (75) days from date the Settlement Administrator first mailed the Proposed Settlement Notice to Class Employees, whichever is sooner. Opt Out requests must be made in writing via U.S. First Class Mail and be postmarked by the Opt Out Response Deadline, which shall be specified in the Proposed Settlement Notice, to be timely.

59.     If the Court grants Preliminary Approval of this Agreement, the Settlement Administrator shall establish a QSF pursuant to 26 C.F.R. § 1.468B-1 for the purposes of administering the Settlement on or before the Effective Date. The Parties shall provide the Settlement Administrator with all necessary cooperation for the creation of the QSF, including but not limited to the execution of all necessary documents.

60.     Defendants shall fund the QSF with the Maximum Settlement Fund within fourteen (14) days after the Effective Date.  Borgata and MGM National Harbor shall each fund the

4880-7664-1537.1

Maximum Settlement Fund in the same percentage allocation of the Net Settlement Fund to their respective classes as set forth in Paragraph 39, above.

61.     To effectuate the terms of the Settlement and to correct for mathematical or factual errors in the allocations to Class Members, the Settlement Administrator shall allocate from the Maximum Settlement Fund $5,000.00 to create a Reserve Fund, which the Settlement Administrator may use, with approval from Defendants and Class Counsel, to make payments to Class Members who dispute their allocation amounts, to individuals who were not identified as Class Employees but have a good faith claim for participation in the settlement, or for any other reasonable purpose necessary to effectuate the settlement.

62.     Settlement Administrator will create a settlement website where pertinent pleadings, dates, and other information about the Agreement will be posted.  Any URL for the website must be approved by Defendants, which approval will not be unreasonably withheld.

### ISSUANCE OF THE PAYMENTS UNDER THIS SETTLEMENT

63.     Within fourteen (14) days of the date Defendants fund the QSF with the Maximum Settlement Fund, the Settlement Administrator shall issue (i) Settlement Checks to Class Members; (ii) a check or wire transfer (at Class Counsel's option) in the amount of any Court-approved attorneys' fees and costs to Class Counsel; and (iii) a check (or checks) in the amount of any Court-approved Service Payments payable to Named Plaintiffs to be delivered to Class Counsel.

64.     The Settlement Checks shall be valid and negotiable for a period of one hundred and twenty (120) days from issuance.  Any Settlement Checks that are not cashed or deposited within one hundred and twenty (120) days from issuance shall become void.

65.     At the end of the one hundred and twenty (120) day period from the date the Settlement Checks were mailed, Named Plaintiffs and the Class Members shall remain bound by

4880-7664-1537.1

this Agreement and the Final Order Approving Settlement, notwithstanding any failure to cash or deposit the Settlement Check issued pursuant to this Paragraph.

66.     Any portion of the Net Settlement Amount that remains outstanding due to Class Members who did not timely negotiate their Settlement Checks will be distributed to the State of New Jersey's unclaimed property fund to be held by the State of New Jersey for the benefit of the Borgata Class Member at issue or the State of Maryland's unclaimed property fund to be held by the State of Maryland for the benefit of the MGM National Harbor Class Member at issue.

67.     For tax purposes, 50% of each Settlement Check shall be treated as back wages, and the other 50% of each Settlement Check shall be treated as interest, any applicable penalties, liquidated damages, and other non-wage relief.

68.     Payments treated as back wages shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and other appropriate taxing authorities (together with the IRS, the "Taxing Authorities") and the payee under the payee's name and Social Security number on an IRS Form W-2.  The employee portion of all applicable income and payroll taxes will be the sole responsibility of the individual Class Member, and shall come out of the Net Settlement Amount. Payments treated as back wages will also be made net of any Employer Payroll Taxes, which shall be paid out of the Maximum Settlement Fund.  The Settlement Administrator shall remit the Employer Payroll Taxes to the appropriate Taxing Authorities.

69.     Payments treated as interest and/or liquidated damages shall be made without withholding and shall be reported to the Taxing Authorities and the payee, to the extent required by law, under the payee's name and Social Security number on an IRS Form 1099.

70.    The Settlement Administrator shall be responsible for determining the appropriate number of exemptions to be used in calculating payroll tax and withholding, deciding the appropriate tax rate, and issuing IRS Forms W-2 and Forms 1099 as appropriate.

71.    Within seven (7) calendar days following Final Approval, Class Counsel shall provide the Settlement Administrator with a duly completed IRS Form W-9. The payments provided pursuant to Paragraph 56 shall be considered attorneys' fees and reported on behalf of Class Counsel to the Taxing Authorities on a Form 1099 issued to Class Counsel by the Settlement Administrator, provided the Settlement Administrator has timely received a duly completed Form W-9 from Class Counsel.

72.    The Service Payments paid to Named Plaintiffs under this Agreement shall be reported as non-wage income to the Taxing Authorities on a Form 1099 issued to Named Plaintiffs by the Settlement Administrator.

73.    Class Counsel, Counsel for Defendants, and Defendants make no representations, and it is understood and Named Plaintiffs agree on behalf of Class Members, that Class Counsel, Counsel for Defendants, and Defendants have made no representations, as to the taxability of any portions of the Settlement Check to Named Plaintiffs or any Class Member, the payment of any costs or award of attorneys' fees to Class Counsel, or any Service Payments to Named Plaintiffs. The Notice Materials will advise Class Employees to seek their own tax advice prior to acting in response to the Notices. Neither Class Counsel nor Counsel for Defendants intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

4880-7664-1537.1

74.     The Settlement Administrator shall provide periodic updates to Class Counsel and Counsel for Defendants regarding Class Employee opt outs, Class Member objections, and Settlement Check negotiation rates.

75.     The Settlement Administrator shall keep a log of all communications with any Class Employees, and shall be responsible for responding to inquiries about the settlement. In the event any Class Employee requests to speak to Class Counsel or has a question that seeks legal advice about the settlement, the Settlement Administrator shall provide that person with Class Counsel's contact information, including telephone number, email address, and mailing address. The Settlement Administrator shall forward all other unresolved questions or issues in writing to Class Counsel and Counsel for Defendants, who will work jointly to attempt to provide a resolution.

76.     Within seven (7) days of the Opt Out Response Deadline for all Class Employees, the Settlement Administrator shall provide Defendants and Class Counsel with a list of the employee identification numbers of all Class Employees (a) who have opted out of the settlement; (b) who do not opt out of the settlement; and (c) the final allocations of amounts to be distributed to each of the Class Members. Once the final allocations have been calculated, payments to each Class Member will be in accordance with those allocations.

**INJUNCTION BARRING PURSUIT OF RELEASED CLAIMS.**

77.     As part of the Final Approval Order and Judgment, Named Plaintiffs and Class Members, and any person or agency or entity acting on behalf of or in concert with them, shall be enjoined from filing, initiating or continuing to prosecute any actions, claims, complaints, or proceedings in court, arbitration, or with any other entity, agency or body, with respect to the Released State Claims and Released Federal Claims (collectively, the "Released Claims").  This

settlement is conditioned upon those releases by Class Members and Named Plaintiffs of the Released Claims as described in this Agreement, and upon covenants by Named Plaintiffs and all Class Members that they will not and cannot participate in any actions, lawsuits, proceedings, complaints or charges brought individually, collectively, or on a class or representative basis, or by any other agency, persons or entity in any court or arbitration or before any administrative body with respect to the Released Claims, nor will Named Plaintiffs or any Class Members contest or interfere with efforts by Defendants or by any other Released Parties to oppose any attempt to bring such Released Claims against any of them.  Additionally, it is agreed herein that neither injunctive or declaratory relief, nor any equitable relief will be ordered by the Court against Defendants in final approval of the settlement, which will otherwise be grounds for Defendants, or either of them, rescinding and terminating this Settlement Agreement.

## <u>NON-ADMISSION OF LIABILITY</u>

78.     This Agreement shall not in any way be construed as an admission by Defendants that they have acted wrongfully with respect to Named Plaintiffs, Class Employees, or to any other person, collectively or individually, and Defendants specifically disclaim any liability to or wrongful acts against Named Plaintiffs, Class Employees, or any other person, on the part of Defendants or the Released Parties.

## <u>COURT RETAINS JURISDICTION TO ENFORCE AGREEMENT</u>

79.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of the Agreement, to the extent permitted by law, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement. This retention of jurisdiction encompasses any disagreement among the Parties concerning the final forms of the Notices or other documents necessary to implement

4880-7664-1537.1

this Agreement, and all other disputes regarding the Agreement and its implementation. Any action to enforce this Agreement shall be commenced and maintained only in this Court.

## GOVERNING LAW

80.     This Agreement is made and entered into in the State of New Jersey and shall in all respects be interpreted, enforced, and governed by and under the laws of the State of New Jersey.

## COOPERATION CLAUSE

81.     The Parties agree to cooperate to effectuate the settlement of the Litigation, including securing the Court's approval of the Agreement, assisting with the administration of the settlement in accordance with the terms of this Agreement, and obtaining a final dismissal. The Parties further agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the terms and conditions of the Agreement, including but not limited to obtaining the dismissal, transfer to the Court, or stay of any pending or subsequently-filed class or collective action lawsuit that alleges any of the claims covered by the Releases herein.

## ASSIGNMENTS

82.     Named Plaintiffs and Class Counsel represent that they have not assigned or transferred, or purported to assign or transfer, to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

## BINDING AGREEMENT

83.     This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of

4880-7664-1537.1

Defendants and to their respective heirs, administrators, representatives, executors, successors, and assigns.

## ARM'S LENGTH TRANSACTION; MATERIALITY OF TERMS

84.     The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

## SEVERABILITY

85.     Should any clause, sentence, provision, Paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, Paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

## WAIVERS, ETC. TO BE IN WRITING

86.     No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's Preliminary or Final Approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties, and then only to the extent set forth in such written waiver, modification, or amendment subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party,

4880-7664-1537.1

notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

## CAPTIONS

87.     The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

## CONSTRUCTION

88.     The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

## SOLE AND ENTIRE AGREEMENT

89.     This Agreement, including any exhibits attached hereto, sets forth the entire agreement between the Parties hereto. This Agreement fully supersedes any and all prior oral or written agreements or understandings between the Parties hereto pertaining to the subject matter hereof.  This Agreement may only be modified in a writing signed by all Parties.

## EXTENSIONS OF TIME

90.     If any deadlines related to this Agreement cannot be met, Class Counsel and Counsel for Defendants shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement. In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

## FACSIMILE/ELECTRONIC SIGNATURES

91.     Any signature made and transmitted by facsimile or email, or by certified e-signing, for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

## THIRD PARTY BENEFICIARIES

92.     The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries other than third parties that are identified as Released Parties as defined in Paragraph 38.

## COUNTERPARTS

93.     This Agreement may be executed in two or more counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute one and the same instrument.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

*maria d maldonado*

DATED: _Nov. 11_____, 2021      By: _____
                                             Maria D. Maldonado

*Laura Day*

DATED: _Nov. 11_____, 2021      By: _____
                                             Laura A. Day

Marina District Development Company, LLC d/b/a
Borgata Hotel Casino & Spa

DATED: _____, 2021      By: _____

                                        Print Name:_____

                                        Title:_____

                                        MGM National Harbor, LLC

DATED: _____, 2021

                                        By: _____

                                        Print Name:_____

                                        Title:_____

4880-7664-1537.1

DATED: _____, 2021        By: _____
                                        Maria D. Maldonado


DATED: _____, 2021        By: _____
                                        Laura A. Day

                                   Marina District Development Company, LLC d/b/a
                                   Borgata Hotel Casino & Spa

DATED: 11/12/2021 | 1:47 PM EST, 2021   By: _____

                                   Print Name: Hugh Turner

                                   Title: Chief Financial Officer


                                   MGM National Harbor, LLC

DATED: 11/12/2021 | 6:16 PM EST, 2021   By: _____

                                   Print Name: Max Fisher

                                   Title: Chief Financial Officer

                    4880-7664-1537.1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARIA D. MALDONADO, and<br>LAURA A. DAY, on behalf of themselves<br>and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MARINA DISTRICT DEVELOPMENT<br>COMPANY, LLC d/b/a BORGATA HOTEL<br>CASINO & SPA, and MGM NATIONAL<br>HARBOR, LLC<br><br>Defendants. | Case No. 1:20-cv-05599-NLH-KMW |

OFFICIAL COURT NOTICE REGARDING
<u>PROPOSED SETTLEMENT OF CLASS ACTION</u>

To:

[Name]
[Address]
[City, State Zip]

**If you were a current or former tipped dealer at Borgata Hotel Casino & Spa between March 1, 2018 through December 31, 2019, or at MGM National Harbor between January 15, 2018 through December 31, 2019, you may be entitled to a payment from a class action lawsuit settlement.**

**Read this Notice carefully, as the proposed settlement will affect your rights. To receive proceeds from the settlement, <u>you do not have to do anything in response to this Notice</u>, as explained in further detail below.**

**A federal court authorized this Notice. This is not a solicitation from a lawyer.**

- This Notice is directed to members of the Settlement Class (composed of both the Borgata Class and MGM National Harbor Class) as defined below:

- o **Settlement Classes**

    - ▪ **Borgata Class:** All tipped employees working as a Dealer at Borgata earning a direct cash wage of $7.24 or less per hour between March 1, 2018 and December 31, 2019.

    - ▪ **MGM National Harbor Class:** All tipped employees working as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less per hour between January 15, 2018 and December 31, 2019.

- The individual Plaintiffs identified in the caption (the "Named Plaintiffs") are former dealers who sued Defendants Borgata Casino Hotel & Spa and MGM National Harbor ("Defendants") by filing a Complaint alleging that Defendants failed to properly inform its tipped employees of the required tip credit provisions prior to paying them a sub-minimum direct cash wage.

- The Named Plaintiffs filed the Complaint as a class and collective action under the Federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), *et seq*., the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl., §§ 3-501, *et seq.*

- Though Defendants deny the allegations in the Complaint, the Parties have agreed to settle this dispute for the purpose of avoiding further disputes and litigation with its attendant risk, expense, and inconvenience. The Court has not made any ruling on the merits of the claims, and no Party has prevailed in the lawsuit. However, the Court has reviewed and preliminarily approved this settlement and this Notice.

- The settlement monies are being used to pay certain groups of current and former employees of Defendants, attorneys' fees, litigation costs, service payments to the Named Plaintiffs, and the costs of administering the settlement.   Defendants will not take an adverse action against any employee covered by the settlement whether or not he or she accepts a settlement payment.

- Under the allocation formula created by the settlement, you will be entitled to the following settlement payments (before applicable taxes):

    **Settlement Check:    $_____**

Your decisions have legal consequences for you. You have a choice to make:

| YOUR LEGAL RIGHTS AND OPTIONS IN RESPONSE TO THIS NOTICE: | |
| --- | --- |
| **IF YOU DO NOTHING** | By doing nothing you will be bound by the release of the Released State Claims described in this Notice and you will receive a Settlement Check in the mail representing your share of the settlement fund.  If you cash that check, you will also be bound by the release of the Released Federal Claims. |
| **IF YOU OPT OUT OF THE SETTLEMENT** | If you timely opt out of the settlement as explained in this Notice, you will <u>not</u> receive a Settlement Check, and you will not be bound by the release of any of the Released State Claims or Released Federal Claims as described in this Notice. |

## BASIC INFORMATION

### 1.  Why did I receive this Notice?

Defendants' records show that you are a member of the proposed Settlement Class as defined above. As a member of the proposed Settlement Class, you have a right to know about the settlement of a class action lawsuit that affects your rights. This Notice explains the lawsuit, the settlement, and your rights and options.  The Court supervising this case is the U.S. District Court for the District of New Jersey.  The lawsuit is known as *Maldonado, et al. v. Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa, et al.*, No. 1:20-CV-05599-NLH-KMW (the "Litigation").

### 2.  What is this lawsuit about?

In the Complaint, Plaintiffs allege that Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, ("FLSA"), the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.*, the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-401, *et seq.*, and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl., §§ 3-501, *et seq*., by failing to properly inform its tipped employees of the required tip credit provisions prior to paying them a sub-minimum direct cash wage. Defendants deny all the claims asserted in the Complaint and maintain that all of their respective employees were paid, and have always been paid, correctly and in accordance with the law.

### 3.  Why is there a proposed settlement?

The Court did not decide in favor of the Named Plaintiffs or Defendants, and no Party prevailed. The Parties agreed to a settlement to avoid further disputes and the risk, expense, and inconvenience of litigation.

On [DATE], the Court granted preliminary approval of the proposed settlement. The Court will decide whether to give final approval to the proposed settlement in a hearing scheduled for [DATE] ("Final Approval Hearing"). *See* Section 12 below for details.

The Named Plaintiffs and their attorneys believe that this settlement is a good outcome for all individuals covered by the proposed settlement. But if you believe the settlement on behalf of Class Members is not in your interests, you may opt out of the Class settlement. See Section 8 below for details.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

| 4.  What does the settlement provide? |
| --- |

The Maximum Settlement Fund, $12,500,000 in total, fully resolves and satisfies the attorneys' fees and costs approved by the Court, all amounts to be paid to individuals covered by the Settlement (including payroll taxes), the Court-approved service payments to the Named Plaintiffs, and the Settlement Administrator's fees and costs. The Settlement funds are being divided among the individuals covered by the Settlement according to an allocation formula.

| 5.  How much is my payment and how was it calculated? |
| --- |

Based on the allocation formula that has been approved by the Court, you will be receiving a Settlement Check, half of which is subject to deductions for applicable taxes and withholding like any other paycheck, and for which you will receive a W-2, and half of which will not be taxed at this time and will be reported on IRS Form 1099.

The **Settlement Check** is calculated using the following formula:

o     Each Borgata Class member's estimated share of the Borgata Class payment shall be calculated *pro rata* by comparing the number of hours that the Borgata Class member worked as a Dealer at Borgata earning a direct cash wage of $7.24 or less between March 1, 2018 and December 31, 2019 against the total amount of such hours that all Borgata Class members worked between March 1, 2018 and December 31, 2019.

o     Each MGM National Harbor Class member's estimated share of the MGM National Harbor Class payment shall be calculated *pro rata* by comparing the number of hours that the MGM National Harbor Class member worked as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less between January 15, 2018 and December 31, 2019 against the total amount of such hours that all MGM National Harbor Class members worked between January 15, 2018 and December 31, 2019.

Neither Class Counsel nor Defendant makes any representations concerning the tax consequences of your settlement payment. You are advised to obtain personal tax advice prior to

acting in response to this Notice.

## HOW YOU GET A PAYMENT

| **6.  How do I get my payment?** |
|---|

To receive proceeds from the Settlement, **you do not have to do anything in response to this Notice.**

If the Court grants final approval of the Settlement and you do **not** opt out of the settlement (described in Section 8 below), you will be bound by the release of the Released State Claims described in Section 7 below, and you will receive a Settlement Check in the mail representing your share of the settlement fund.

If you choose to cash or deposit the Settlement Check, you will further be bound by the release of the Released Federal Claims described in Section 7 below.

| **7.  What am I giving up if I receive proceeds from the settlement?** |
|---|

If you do not submit an Election to Opt Out of Settlement and Class Action Form in accordance with Section 8 below, you will be deemed to have waived, released, and forever discharged any and all state wage and hour claims that were or could have been asserted based on the facts and/or legal theories alleged in the Complaint, including, for any type of alleged unpaid minimum or overtime wages ("Released State Claims").

In addition, if you also cash or deposit your forthcoming Settlement Check, you will be deemed to have further waived, released, and forever discharged any and all federal wage and hour claims that were or could have been asserted based on the facts and/or legal theories alleged in the Complaint, including, for any type of alleged unpaid minimum or overtime wages ("Released Federal Claims").

The Released Federal Claims and the Released State Claims include liquidated or punitive damages based on said claims, and are intended to include all claims described or identified herein through [DATE OF FINAL APPROVAL]. However, the Released Federal Claims and the Released State Claims do not include any rights or claims (i) that may arise after [DATE OF FINAL APPROVAL]; or (ii) which may not be infringed, limited, waived, released or extinguished by private agreement and/or as a result of any law, statute, or ordinance.

A copy of the claims asserted in the Complaint is available on the settlement website at [website].  You will also be enjoined and prohibited from pursuing the Released State Claims and Released Federal Claims against Defendants.

**HOW YOU REQUEST EXCLUSION FROM OR OBJECT TO THE SETTLEMENT**

| 8. What if I do not want to participate in the settlement? |
|---|

If you do not want to participate in the Class Settlement and do not want to  receive a Settlement Check, and do not wish to release any state wage and hour claims included within the Released State Claims, you must opt out of the settlement by mailing a signed letter to the Settlement Administrator. The Settlement Administrator is:

[SETTLEMENT ADMIN NAME]

[ADDRESS]

[PHONE]

In your letter to the Settlement Administrator requesting to be excluded from the Settlement, you must include: the name of the litigation; your name, telephone number, and address; the casino where you worked; your employee ID (if known); a statement that you do not want to participate in the Settlement and that you want to be excluded; and your signature and the date of your letter.

In order to be valid, your completed letter requesting to be excluded must be postmarked no later than [DATE].  If you timely request to be excluded, you will not be eligible to receive any of the benefits under the Class Settlement or receive a Settlement Check. You will, however, retain whatever legal rights you may have with respect to the Released State Claims described above in Section 7.

| 9. What if I want to object to the settlement? |
|---|

If you do not request exclusion from the Settlement but believe the proposed Settlement is unfair or inadequate in any respect, you may object to the Settlement by mailing a copy of your written objection to the Settlement Administrator at the address listed above.

All objections must be signed and include your address, telephone number, and the name of the Litigation. Your objection should clearly explain why you object to the proposed Settlement and must state whether you or someone on your behalf intends to appear at the Final Approval Hearing. All objections must be filed with the Court or received by the Settlement Administrator, and postmarked by no later than [DATE]. If you submit a timely objection, you may appear, at your own expense, at the Final Approval Hearing, discussed below.

Any Settlement Class Member who does not object in the manner described above shall be deemed to have waived any objections, and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed Settlement, the payment of attorneys' fees, litigation costs, the service payments to the Named Plaintiffs, the claims process, and any and all other aspects of the Settlement. Likewise, regardless of whether you attempt to file an objection, you will be

deemed to have released all of the Released State Claims as set forth above in Section 7 unless you request exclusion from the Settlement in accordance with Section 8 above.

## THE LAWYERS REPRESENTING YOU

**10. Do I have a lawyer in this case?**

The Court has determined that the lawyers at the law firms of Stueve Siegel Hanson LLP, McClelland Law Firm, P.C., Winebrake & Santillo, LLC are qualified to represent you and all individuals covered by this settlement. These lawyers are called "Class Counsel." You will not be charged for these attorneys. You do not need to retain your own attorney to participate as a member of this class action. However, you may consult with any attorney you choose at your own expense before deciding whether to opt out of this settlement.

**11. How will the lawyers be paid?**

Class Counsel will ask the Court to award attorneys' fees in an amount not to exceed one-third (33.33%) of the Maximum Settlement Fund plus reimbursement of no more than $25,000 in expenses, which will be paid from the Maximum Settlement Fund. In addition, Class Counsel will ask the Court to authorize payment from the Maximum Settlement Fund of service payments of not more than $7,500 to each Named Plaintiff to recognize the risks they took and their services to the beneficiaries of this Settlement.

## FINAL APPROVAL OF THE SETTLEMENT

**12. When will the settlement be final and when will I receive my settlement payment?**

If the Court grants Final Approval of the settlement, and you did not request exclusion from the settlement, you will receive your settlement payment in the mail within a few months after Final Approval.

The Court will hold a Final Approval Hearing on the fairness and adequacy of the proposed Settlement, the plan of distribution, Class Counsel's request for attorneys' fees and costs, and the service payments to the Named Plaintiffs on [DATE] at [TIME] in Courtroom ___ of the U.S. District Court for the District of New Jersey, located at _____. The Final Approval Hearing may be continued without further notice to Class Members. You are not required to appear at the hearing to participate in or to opt-out of the Settlement.

## FOR MORE INFORMATION

**13. Are there more details about the settlement?**

This Notice summarizes the proposed settlement. More details are in a Settlement

Agreement, which is posted on the settlement website at [website]. You are encouraged to read it. To the extent there is any inconsistency between this Notice and the Settlement Agreement, the provisions in the Settlement Agreement control. You may also obtain a copy of the Settlement Agreement by sending a request, in writing, to:

Administrator<br>
Administrator<br>
Administrator<br>
Administrator

**14.  How do I get more information?**

      The settlement website contains more information about the settlement, including copies of the Complaint, the Settlement Agreement, and important deadlines.  You can always obtain more information at [website].

      If you have other questions about the settlement, you can contact the Settlement Administrator, or Class Counsel at the addresses and/or telephone numbers below.

Email:
Telephone:

These are the lawyers acting as Class Counsel, one of whom will respond to your questions at the above email and telephone numbers:

    George A. Hanson
    Alexander T. Ricke
    STUEVE SIEGEL HANSON LLP
    460 Nichols Road, Suite 200
    Kansas City, Missouri 64112

    Ryan L. McClelland
    Michael J. Rahmberg
    McCLELLAND LAW FIRM, P.C.
    The Flagship Building
    200 Westwoods Drive
    Liberty, Missouri 64068-1170

    R. Andrew Santillo
    Mark J. Gottesfeld
    WINEBRAKE & SANTILLO, LLC
    Twining Office Center, Suite 211
    715 Twining Road
    Dresher, Pennsylvania 19025

**15.  What if my name or address changes before I receive my settlement payment?**

If, for future reference and mailings from the Court or Settlement Administrator, you wish to change the name or address listed on the envelope in which the Class Notice was first mailed to you, then you must contact the Settlement Administrator at [website, phone number, address].

DATED: _____, 2021

**PLEASE DO NOT CALL OR WRITE THE COURT ABOUT THIS NOTICE.**

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARIA D. MALDONADO, and LAURA A. DAY, on behalf of themselves and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Case No. 1:20-cv-05599-NLH-KMW |
| MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA, and MGM NATIONAL HARBOR, LLC | : : : : | |
| Defendants. | : : | |

## [PROPOSED] ORDER GRANTING PRELIMINARY APPROVAL
## OF CLASS ACTION SETTLEMENT

On _____, 2021, the Court heard a motion for preliminary approval of a settlement of a class and collective action by Plaintiffs Maria D. Maldonado and Laura A. Day ("Named Plaintiffs"), on behalf of themselves and all others similarly situated, and Defendants Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa, and MGM National Harbor, LLC ("Defendants").  The Court has considered the Settlement Agreement and its exhibits, including the Notice Materials; and the submissions of counsel, and hereby finds and orders as follows:

1.      Unless otherwise defined herein, all terms used in this Order (the "Preliminary Approval Order") will have the same meaning as defined in the Settlement Agreement.

2.      The Court finds on a preliminary basis that the settlement memorialized in the Settlement Agreement, and filed with the Court, falls within the range of reasonableness and,

therefore, meets the requirements for preliminary approval as required by Federal Rule of Civil Procedure 23(e).

3. The Court grants preliminary approval of the parties' Settlement Agreement.

4. The Court certifies, for settlement purposes only, the following Settlement Classes pursuant to the Settlement Agreement and Fed. R. Civ. P. 23:

  a. **Borgata Class:** All tipped employees working as a Dealer at Borgata earning a direct cash wage of $7.24 or less per hour between March 1, 2018 and December 31, 2019

  b. **MGM National Harbor Class:** All tipped employees working as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less per hour between January 15, 2018 and December 31, 2019.

5. The Court appoints, for settlement purposes only, Named Plaintiffs Maria D. Maldonado and Laura A. Day as the Class Representatives of the Settlement Class.

6. The Court appoints, for settlement purposes only, the law firms of Stueve Siegel Hanson LLP, McClelland Law Firm, P.C., and Winebrake & Santillo, LLC, as Class Counsel for the purposes of Settlement, and the releases and other obligations therein.

7. This Court authorizes the parties to select a qualified third party settlement administrator to perform duties of the Settlement Administrator in accordance with the terms of the Settlement Agreement.

8. The proposed Notice of Settlement as set forth in the Settlement Agreement is hereby found to be the best practicable means of providing notice under the circumstances and, when completed, shall constitute due and sufficient notice of the proposed class settlement and the Final Approval Hearing to all persons and entities affected by and/or entitled to participate in the settlement, in full compliance with the notice requirements of Fed. R. Civ. P. 23, due process, the Constitution of the United States, the laws of the State of New Jersey, and all other applicable

laws. The Notice of Settlement is accurate, objective, and informative, and provides members of the Settlement Classes with all of the information necessary to make an informed decision regarding their participation in the settlement and its fairness.  The Settlement Administrator is authorized to mail the Notice of Settlement to the Class Employees as provided in the Settlement Agreement.

9.      Class Employees who wish to opt out of the Settlement must submit their written request to opt out no later than (a) forty-five (45) days from the date the Settlement Administrator first mails the Notice of Settlement to Class Employees, or (b) thirty (30) days from the date the Settlement Administrator mails the Notice of Settlement to a Class Employee's additional address, whichever date is later, provided that under no circumstances will any Class Employee be permitted to opt out more than seventy-five (75) days from date the Settlement Administrator first mails the Notice of Settlement to Class Employees.

10.      Any written objection to the Settlement must be submitted to the Settlement Administrator no later than forty-five (45) days after the Notices of Settlement are mailed to the Class Employees.

11.      Pending the Court's decision on final approval of the settlement, this matter is stayed other than as set out in this Order.

12.      The Named Plaintiffs and Defendants are ordered to carry out the settlement according to the terms of the Settlement Agreement.

13.      The Court will conduct a Final Approval Hearing on _____, 2021, at _____ a.m./p.m. to determine the overall fairness of the settlement and to approve the amount of attorneys' fees and costs to Class Counsel and the Service Payments to the Named Plaintiffs. The Final Approval Hearing may be continued without further notice to Class Members.  This Final

Approval Hearing may be converted to a remote proceeding, which, if so, Class Counsel will be instructed to provide a link to the proceedings on the settlement website.

14.     The Named Plaintiff shall file his motion for approval of the settlement, and Class Counsel shall file their unopposed motion for attorneys' fees, costs and expenses, and the Named Plaintiffs' Service Payments on or before _____, 2021.

15.     Consistent with the parties Settlement Agreement at ¶ 49, the Court grants Plaintiffs leave to file the Second Amended Class and Collective Action Complaint and it is deemed properly filed. *See* ECF No. 54.  Pursuant to the Settlement Agreement, Defendant MGM National Harbor is dismissed without prejudice.  Pursuant to the Settlement Agreement, Plaintiffs Laura A. Day and Defendant MGM National Harbor, LLC are added as parties.  Defendants need not file an Answer to the Second Amended Class and Collective Action Complaint.

IT IS SO ORDERED.

Dated: _____, 2021

_____
The Honorable Noel L. Hillman
U.S. District Judge

# EXHIBIT C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARIA D. MALDONADO, and<br>LAURA A. DAY, on behalf of themselves<br>and all others similarly situated, | : : : : : | |
| Plaintiffs, | : : | Case No. 1:20-cv-05599-NLH-KMW |
| v. | : : : | |
| MARINA DISTRICT DEVELOPMENT<br>COMPANY, LLC d/b/a BORGATA HOTEL<br>CASINO & SPA, and MGM NATIONAL<br>HARBOR, LLC | : : : : : | |
| Defendants. | : : | |

**[PROPOSED] ORDER GRANTING**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

On _____, 2021, the Court heard a motion for final approval of a settlement of

a class and collective action by Plaintiffs Maria D. Maldonado and Laura A. Day ("Named

Plaintiffs" or "Class Representatives"), on behalf of themselves and all others similarly situated,

and Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa and MGM

National Harbor, LLC ("Defendants"). The Court has considered the Motion for Final Approval

of Class Action Settlement and other related materials submitted by the parties, as well as the

parties' presentation at the hearing on final approval, and otherwise being fully informed in the

premises, hereby finds and orders as follows:

1.    Unless otherwise defined herein, all terms used in this Order (the "Final Approval

Order") will have the same meaning as defined in the Settlement Agreement.

2.    The Court has jurisdiction over the subject matter of this Litigation pursuant to 28

U.S.C. §§ 1331, 1332, and 1367, including jurisdiction over all members of the Settlement Classes

certified by order dated _____, 2021 (ECF No. ___), and defined as:

    a.    **Borgata Class:** All tipped employees working as a Dealer at Borgata earning a direct cash wage of $7.24 or less per hour between March 1, 2018 and December 31, 2019.

    b.    **MGM National Harbor Class:** All tipped employees working as a Dealer at MGM National Harbor earning a direct cash wage of $11.49 or less per hour between January 15, 2018 and December 31, 2019.

3.    The Court finds that the Settlement Classes satisfy the requirements of Fed. R. Civ. P. 23(a) and is maintainable under Rule 23(b)(3) for purposes of settlement of this Litigation only. In so finding, the Court does not determine whether the certification of the class would remain proper under the more stringent standard that requires a showing of, *inter alia*, manageability.

4.    The Court confirms the appointments of (a) Named Plaintiffs Maria D. Maldonado and Laura A. Day as Class Representatives of the Settlement Classes, and (b) the law firms of Stueve Siegel Hanson LLP, McClelland Law Firm, P.C., and Winebrake & Santillo, LLC as Class Counsel.

5.    The Notice of Settlement sent to the Class members via First Class Mail adequately informed the Class Members of the terms of the Settlement Agreement, their estimated recovery if the Settlement was approved, the process available to obtain monetary relief, their right to request exclusion from the Class and pursue their own remedies, and their opportunity to file written objections and appear and be heard at the Final Approval Hearing. The Notice of Settlement also adequately informed the Class Members of the contact information for the Settlement Administrator and Class Counsel. Thus, the Court finds that the Notice of Settlement provided to the Class Members satisfied the requirements of Fed. R. Civ. P. Rule 23(e)(1)(B).

6.    Pursuant to Fed. R. Civ. P. 23(e)(2), the Court finds that the settlement memorialized in the Settlement Agreement, and filed with the Court, is fair, reasonable, and

adequate, and in the best interests of the Class Members. The Court finds that: (a) the strength of the Class Representative's and Class Members' claims weighed against the defenses of Defendants and the complexity, length, and expense of further litigation, support approval of the Settlement; (b) the Maximum Settlement Amount of $12,500,000 as set forth in the Settlement Agreement is a fair, reasonable, and adequate settlement of the Named Plaintiffs' individual claims and the claims of the Settlement Classes; (c) the Settlement was reached pursuant to arm's-length negotiations between the parties; (d) the support for the Settlement expressed by Class Counsel and counsel for Settling Entities, who have significant experience representing parties in complex class actions, including those involving wage and hour claims, weighs in favor of approval of the Settlement; (e) the absence of any objections to the Settlement by Class Members supports approval of the Settlement; and (f) the Litigation has progressed to a stage where the Court and the parties could evaluate the merits of the case, potential damages, and the probable course of future litigation.

7.      For the same reasons that the Court finds the Settlement Agreement is fair, reasonable, and adequate under Fed. R. Civ. P. 23(e)(2), the Court likewise finds that the resolution of the Fair Labor Standards Act claims represents a fair and reasonable resolution of a *bona fide* dispute.

8.      The Settlement Administration Costs, as set forth in the Settlement Agreement, estimated to be $_____ are approved and shall be paid to the Settlement Administrator from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

9.      The Service Payments, as set forth in the Settlement Agreement, are approved and shall be awarded and paid to Named Plaintiffs from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

10.     Class Counsel is awarded $_____$ for attorneys' fees and $_____$ for costs and will receive such payment from the Qualified Settlement Fund according to the procedures set forth in the Settlement Agreement.

11.     Class Members shall receive their settlement shares according to the allocation formula and procedures set forth in the Settlement Agreement.  Any portion of the Net Settlement Amount that is not claimed by Class Members because those individuals did not timely negotiate their Settlement Checks will escheat to the State of New Jersey and/or State of Maryland's unclaimed property fund to be held by the State of New Jersey and/or the State of Maryland for the benefit of the Class Member.

12.     The Court orders that any Class Member who did not timely request exclusion from the Settlement Agreement is bound by the terms of the Settlement Agreement, and fully releases and discharges the Released State Claims.

13.     The Court orders that any Class Member who negotiates his or her Settlement Check is bound by the terms of the Settlement Agreement and fully releases and discharges the Released Federal Claims upon such negotiation of his or her Settlement Check.  The Court further orders that any Class Employee who claims his or her Settlement Check from the State of New Jersey or State of Maryland's unclaimed property fund fully releases and discharges the Released Federal Claims.

14.     As identified by the Settlement Administrator in Exhibit \_\_ annexed to its representative's declaration filed in support of Plaintiffs' Motion for Final Approval of the Settlement, the Court finds that \_\_ individuals have timely requested exclusion from the Settlement Class. These individuals are (a) excluded from the Settlement Class previously certified; (b) are not bound by the terms of the Settlement Agreement; (c) do not release or discharge the Released

Class Claims; and (d) are not entitled to participate in the Settlement.

15.     The Court finds that the notices to government officials of this settlement have been transmitted as required under the Class Action Fairness Act.

16.     This Court grants final approval of the Settlement.

17.     The Court enjoins the Named Plaintiffs and Class Members, and any person or agency or entity acting on behalf of or in concert with them, shall be enjoined from filing, initiating or continuing to prosecute any actions, claims, complaints, or proceedings in court, arbitration, or with any other entity, agency or body, with respect to the Released State Claims and Released Federal Claims (collectively, the "Released Claims").

18.     This matter is dismissed with prejudice, without any cost to any of the parties except as provided in the Settlement Agreement. The Clerk is directed to enter judgment consistent with this Order.

IT IS SO ORDERED, ADJUDGED AND DECREED.


Dated: _____, 2022                    _____
                                                The Honorable Noel L. Hillman
                                                U.S. District Judge

# EXHIBIT  D

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARIA D. MALDONADO, and LAURA A. DAY, on behalf of themselves and all others similarly situated, | : : : : | |
| Plaintiffs, | : : | |
| v. | : | Case No. 1:20-cv-05599-NLH-KMW |
| MARINA DISTRICT DEVELOPMENT COMPANY, LLC d/b/a BORGATA HOTEL CASINO & SPA, and MGM NATIONAL HARBOR, LLC | : : : : : | |
| Defendants. | : : | |

## SECOND AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Maria D. Maldonado ("Plaintiff") and Laura A. Day, on behalf of themselves and all others similarly situated, allege as follows:

## INTRODUCTION

1.      Plaintiffs bring this wage and hour class and collective action against Marina District Development Company, LLC d/b/a Borgata Hotel Casino & Spa ("Borgata") and MGM National Harbor, LLC ("MGM") (collectively, "Defendants").  Pursuant to their casino-wide policies and procedures, Defendants failed to pay Plaintiffs, and all other similarly situated employees, the mandated federal, state, or county minimum wage rate for all hours worked and overtime for all hours worked over 40 in a single workweek due to a failure to comply with federal and state tip credit notice requirements. Specifically, Defendants failed to properly inform their tipped employees of the required tip credit provisions prior to paying them a sub-minimum direct cash wage.  Defendants' systemic violation of federal and state wage laws was willful.

2.      Plaintiffs, on behalf of themselves and others similarly situated, bring this lawsuit as: (a) a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq*., to recover unpaid minimum and overtime wages owed to Plaintiffs and other similarly situated workers employed by Defendants; and (b) Rule 23 class actions under both New Jersey and Maryland state law, including the New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq.*, Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*., and the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*., to recover unpaid wages owed to Plaintiffs and all other similarly situated workers employed by Defendants.

## JURISDICTION AND VENUE

3.      Federal question jurisdiction over the FLSA claims of Plaintiffs and others similarly situated is based on 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

4.      Supplemental jurisdiction over the state law claims of Plaintiffs and others similarly situated is based on 28 U.S.C. § 1367, in that the state law claims are so related to the FLSA claims that they form part of the same case and controversy.

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

6.      Plaintiff Maldonado is an individual currently residing in Massachusetts.  From approximately January 2015 through April 2019, Plaintiff Maldonado worked for Defendant Borgata as an employee at the Borgata Hotel Casino & Spa located in Atlantic City, New Jersey.

7.      Plaintiff Day is an individual currently residing in Indiana.  From approximately October 2018 through March 2019, Plaintiff Day worked for Defendant MGM as an employee at the MGM National Harbor located in Oxon Hill, Maryland.

8.      Defendant Borgata is a limited liability company organized under the laws of the State of New Jersey with its principal place of business located in the State of New Jersey. Defendant Borgata is registered to do business and does conduct business in the State of New Jersey.

9.      Defendant MGM is a limited liability company organized under the laws of the State of Nevada, with its principal place of business located in the State of Nevada.  Defendant MGM is registered to do business and does conduct business in the State of Maryland.

10.     At all relevant times, Defendants were the employer of Plaintiffs, and all other similarly situated employees.

11.     At all times relevant to this action, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendants.

12.     Plaintiffs and all similarly situated employees are non-exempt, hourly employees who work or worked for Defendants within the applicable limitations periods.

<u>**OVERVIEW OF PLAINTIFFS' CLAIMS**</u>

<u>**Overview of Defendants' Violation of the Tip Credit Notice Provisions**</u>

<u>***FLSA Requirements***</u>

13.     Under the FLSA, an employer may, in certain circumstances, take a "tip credit" toward its federal minimum wage obligations for tipped employees.  Pursuant to the explicit language of the FLSA, a tip credit may not be taken "with respect to any tipped employee unless such employee has been informed by the employer of the provisions of [29 U.S.C. § 203(m)], and

all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." 29 U.S.C. § 203(m)(2).

14.     The federal regulation interpreting Section 3(m) of the FLSA explains as follows:

[A]n employer is not eligible to take the tip credit unless it has informed its tipped employees in advance of the employer's use of the tip credit of the provisions of section 3(m) of the Act, i.e.: [1] The amount of the cash wage that is to be paid to the tipped employee by the employer; [2] the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by the employer, which amount may not exceed the value of the tips actually received by the employee; [3] that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and [4] that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

29 C.F.R. § 531.59(b).

15.     Defendants employ Plaintiffs and other similarly situated tipped employees and pay them a direct cash wage that is less than the FLSA's federal minimum wage ($7.25 per hour) but failed to properly notify them of the tip credit requirements of the FLSA.  Despite this violation of the FLSA's tip credit notice provisions, Defendants have taken a tip credit toward their obligations to pay the federal minimum wage to Plaintiffs and all other similarly situated tipped employees.

16.     Specifically, Plaintiffs and other similarly situated employees are not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

17.     Likewise, when Defendants change the amount of the tip credit they claim against their obligation to pay Plaintiffs and other similarly situated employees the FLSA's required minimum wage, Defendants do not inform Plaintiffs and other similarly situated employees of the change in the amount of the tip credit claimed.

18.     Defendants' FLSA violations alleged herein were willful in that Defendants either knew of the specific FLSA requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether their conduct violated the FLSA.

19.     As a result of Defendants' above-described FLSA violations, Plaintiffs and other similarly situated employees are entitled to recover from Defendants the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required federal minimum wage), which is the amount of the unpaid minimum wages, (2) an additional equal amount as liquidated damages, and (3) a reasonable attorneys' fee and costs of this action.

*Maryland's Requirements*

20.     The analysis of Defendant MGM's entitlement to claim the tip credit "is the same under the FLSA and MWHL." *Prusin v. Canton's Pearls, LLC*, No. JKB-16-0605, 2017 WL 5126156 at *4 (D. Md. Nov. 6, 2017) (finding the MWHL tip credit notice provision "nearly identical" to that of the FLSA).

21.     Under the MWHL, an employer may, in certain circumstances, take a "tip credit" toward its state or county minimum wage obligations for tipped employees.  Pursuant to the explicit language of the MWHL, a tip credit may not be taken unless the employee "(i) is engaged in an occupation in which the employee customarily and regularly receives more than $30 each month in tips; (ii) has been informed by the employer about the provisions of this section; and (iii)

has kept all of the tips that the employee received."   Md. Code Ann., Lab. & Empl. § 3-419(a)(1)(i)-(iii).

22.     Md. Code Ann., Lab. & Empl. § 3-419(b) provides: "(b)  Subject to the limitations in this section, an employer may include, as part of the wage of an employee to whom this section applies: (1)  an amount that the employer sets to represent the tips of the employee; or (2)  if the employee or representative of the employee satisfies the Commissioner that the employee received a lesser amount in tips, the lesser amount."  In addition, "[t]he tip credit amount that the employer may include under subsection (b) of this section may not exceed the minimum wage established under §  3-413 of this subtitle for the employee less $3.63."  *Id*. at § 3-419(c).

23.     Defendant MGM employs Plaintiff Day and other similarly situated tipped employees and pays them a direct cash wage that is less than the MWHL's state or county minimum wage[1] but failed to properly notify them of the tip credit requirements of the MWHL. Despite this violation of the MWHL's tip credit notice provisions, Defendant MGM has taken a tip credit toward its obligations to pay the state or county minimum wage to Plaintiff Day and all other similarly situated tipped employees.

24.     Specifically, Plaintiff Day and other similarly situated employees are not informed, in advance of Defendant MGM's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant

---

[1]  Under the MWHL, the required state minimum wage is: (a) $8.75 per hour effective July 1, 2016; (b) $9.25 per hour effective July 1, 2017; (c) $10.10 per hour effective July 1, 2018; (d) $11.00 per hour effective January 1, 2020; and (e) $11.75 per hour effective January 1, 2021.  The minimum wage in Prince George's County is: (a) $9.55 per hour effective October 1, 2015; (b) $10.75 per hour effective October 1, 2016; (c) $11.50 per hour effective October 1, 2017; and (d) $11.75 per hour effective January 1, 2021.  *See* Prince George's Cnty. Code, Labor Code, § 13A-117; *Craighead v. Full Citizenship of Md., Inc.*, No. PX-17-595, 2020 WL 5653224 at *6 n. 3 (D. Md. Sept. 23, 2020).  The U.S. Department of Labor regulations provide that where state or local law requires payment of a minimum wage higher than the federal minimum wage, the FLSA should not "be taken to override or nullify the provisions of these laws."  29 C.F.R. § 778.5.

MGM, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

25.    Likewise, when Defendant MGM changes the amount of the tip credit it claims against its obligation to pay Plaintiff Day and other similarly situated employees the MWHL's required minimum wage, Defendant MGM does not inform Plaintiff Day and other similarly situated employees of the change in the amount of the tip credit claimed.

26.    Defendant MGM's MWHL's violations alleged herein were willful in that Defendant MGM either knew of the specific MWHL requirements and prohibitions at issue at the time of the alleged violations and intentionally did not comply with them, or showed reckless disregard for the matter of whether its conduct violated the MWHL.

27.    As a result of Defendant MGM's above-described MWHL's violations, Plaintiff Day and other similarly situated employees are entitled to recover from Defendant MGM the amount of the sum of (1) the tip credit taken (*i.e.*, the difference between the direct cash wage and the required state or county minimum wage), which is the amount of the unpaid minimum wages, (2) an additional equal amount as liquidated damages, and (3) a reasonable attorneys' fee and costs of this action.

## COLLECTIVE AND CLASS ACTION ALLEGATIONS

28.    Plaintiffs brings Count I, the FLSA claim arising out of Defendants' failure to comply with the tip credit notice requirement, as an "opt-in" collective action pursuant to 29 U.S.C. § 216(b) on behalf of herself individually and the following collective action class:

a. **FLSA Tip Credit Notice Collective:**  All tipped employees working as dealers at Borgata or MGM National Harbor earning a direct cash wage of $11.49 or less per hour at any time between January 15, 2018 and December 31, 2019.

29.     Plaintiffs' FLSA claim (Count I) may be pursued by those who opt-in to this case, pursuant to 29 U.S.C. § 216(b).

30.     Plaintiffs, on behalf of themselves and all others similarly situated, seek relief on a collective basis challenging Defendants' above-described FLSA violations.  The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

31.     Plaintiff Maldonado brings Count II, the NJWPL claim arising out of Defendant Borgata's failure to pay all wages due as a result of failure to comply with the FLSA's tip credit notice requirements, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

a. **NJWPL Unpaid Wages Class:** All tipped employees working as dealers at Borgata earning a direct cash wage of $7.24 or less per hour at any time between March 1, 2018 and December 31, 2019.

32.     Plaintiff Day brings Count III, the MWHL claim arising out of Defendant MGM's violation of the MWHL's tip credit notice provisions, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

b. **MWHL Unlawful Tip Credit Notice Policy Class:**  All tipped employees working as dealers at MGM National Harbor earning a direct cash wage of

$11.49 or less per hour at any time between January 15, 2018 and December 31, 2019.

33.     Plaintiff Day brings Count IV, the MWPCL claim arising out of Defendant MGM's failure to pay all wages due, as a class action under Fed. R. Civ. P. 23, on behalf of herself and the following class:

> c.     **MWPCL Unpaid Wages Class:** All tipped employees working as dealers at MGM National Harbor earning a direct cash wage of $11.49 or less per hour at any time between January 15, 2018 and December 31, 2019.

34.     Plaintiff Maldonado's NJWPL claim (Count II), and Plaintiff Day's MWHL claim (Count III) and MWCPL claim (Count IV), described in detail below, satisfy the numerosity, commonality, typicality, adequacy, and superiority requirements of a class action pursuant to Fed. R. Civ. P. 23.

35.     These classes each number, at least, in the hundreds of persons.  As a result, joinder of all class members in a single action is impracticable.  Class members may be informed of the pendency of this action through regular mail, e-mail, and/or posting of an approved notice.

36.     There are common questions of fact and law to the classes that predominate over any questions affecting only individual class members.  The questions of law and fact common to the classes arising from Defendants' actions include, without limitation, the following:

> a.     Whether Defendants violated the FLSA, NJWPL, MWHL, and/or MWPCL when they failed to provide notice of the tip credit resulting in unpaid minimum wages; and

> b.     Whether Defendants willfully violated the FLSA, NJWPL, MWHL, and/or MWPCL.

37.     The questions set forth above predominate over any questions affecting only individual persons, and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims.

38.     Plaintiffs' claims are typical of those of the respective classes in that class members have been employed in the same or similar positions as Plaintiffs and were subject to the same or similar unlawful practices as Plaintiffs.

39.     A class action is the superior method for the fair and efficient adjudication of Plaintiffs' claims.  Defendants have acted or refused to act on grounds generally applicable to the classes.  The presentation of separate actions by individual class members could create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

40.     Plaintiffs are adequate representatives because each is a member of each of the classes they seek to represent, and their interests do not conflict with the interests of the members of those classes.  The interests of the members of the classes will be fairly and adequately protected by Plaintiffs and their counsel, who collectively are experienced prosecuting complex wage and hour, employment, and class action litigation.

41.     Maintenance of this action as a class action is a fair and efficient method for adjudication of this controversy.  It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action.  In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all class members.

**ALLEGATIONS APPLICABLE TO THE FLSA CLAIM (COUNT I)**

42.     At all times material herein, Plaintiffs and all others similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. §§ 201, *et seq*.

43.     The FLSA regulates, among other things, the payment of minimum wage and overtime pay by employers whose employees are engaged in interstate commerce, or engaged in the production of goods for commerce, or employed in an enterprise engaged in commerce or in the production of goods for commerce.  *Id*. at §§ 206(a), 207(a)(1).

44.     Defendants are subject to the minimum wage and overtime pay requirements of the FLSA because they are enterprises engaged in interstate commerce and their employees are engaged in commerce.

45.     During all relevant times to this action, Defendants were the "employers" of Plaintiffs and all similarly situated employees within the meaning of the FLSA.  *Id*. at § 203(d).

46.     During all times relevant to this action, Plaintiffs and all similarly situated employees were Defendants' "employees" within the meaning of the FLSA.  *Id*. at § 203(e).

47.     Plaintiffs and all similarly situated employees are covered, non-exempt employees within the meaning of the FLSA.  Accordingly, Plaintiffs and all similarly situated employees must be paid minimum wage in accordance with 29 U.S.C. § 206.

48.     Pursuant to the FLSA, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *Id*. at § 207(a).

49.     Although the FLSA contains some exceptions (or exemptions) from the minimum wage and overtime requirements, none of those exceptions (or exemptions) applies here.

50.     Plaintiffs and all similarly situated employees are victims of uniform compensation policies.  Specifically, Defendants claimed a tip credit without satisfying the FLSA's tip credit

notice provisions.  Thus, Defendants are not entitled to claim a tip credit for any hours worked during the collective period.

51.     As such Plaintiffs are required to the full federal minimum wage for each hour worked during the collective period.  In addition, Plaintiffs are entitled to be paid overtime based on the federal minimum wage rate times 1.5 without regard to the tip credit for each hour worked over 40 during the collective period.

52.     Defendants have acted neither in good faith nor with reasonable grounds to believe that their actions and omissions were not a violation of the FLSA, and, as a result, Plaintiffs and other similarly situated employees are entitled to recover an award of liquidated damages in an amount equal to the amount of unpaid wages as described by Section 16(b) of the FLSA, codified at 29 U.S.C. § 216(b).  Alternatively, should the Court find Defendants acted in good faith or with reasonable grounds in failing to pay minimum wage and overtime compensation, Plaintiffs and all similarly situated employees are entitled to an award of prejudgment interest at the applicable legal rate.

53.     As a result of these violations of the FLSA's minimum wage and overtime pay provisions, compensation has been unlawfully withheld by Defendants from Plaintiffs and all similarly situated employees.  Accordingly, pursuant to 29 U.S.C. § 216(b), Defendants are liable for the unpaid minimum wages and overtime premium pay along with an additional amount as liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and costs of this action.

## ALLEGATIONS APPLICABLE TO NJWPL Claim

## (COUNT II)

54.     At all times relevant, Plaintiff Maldonado and the class members have been entitled to the rights, protections, and benefits provided under New Jersey state law, including the New

Jersey Wage and Hour Law ("NJWHL"), N.J. Stat. Ann. § 34:11-56a, *et seq*. and New Jersey Wage Payment Law ("NJWPL"), N.J. Stat. Ann. § 34:11-4.1 *et seq*.

55.     The NJWHL regulates, among other things, the payment of minimum wage and overtime wages by employers, subject to limited exceptions not applicable herein, and provide or have provided for during the applicable limitations period for a higher minimum wage than that provided for under federal law.  During the last six years, the New Jersey minimum wage rate has been:  $8.25 (2014), $8.38 (2015), $8.38 (2016), $8.44 (2017), $8.60 (2018), $8.85 (January 1, 2019), $10.00 (July 1, 2019), $11.00 (2020).

56.     The NJWPL stipulates the time, manner and mode of payment of the full amount of wages due to employees, and, subject to certain exceptions not applicable here, prohibits the withholding or diversion of any portion of an employee's wages.

57.     The NJWHL was purposely drafted in parallel with the FLSA and is construed in parallel and as broadly as the FLSA.

58.     During all times relevant to this action, Defendant Borgata was the "employer" of Plaintiff Maldonado and the class members within the meaning of the NJWHL and NJWPL.

59.     During all times relevant to this action, Plaintiff Maldonado and the class members were Defendant Borgata's "employees" within the meaning of the NJWHL and NJWPL.

60.     Plaintiff Maldonado and the class members are covered, non-exempt employees within the meaning of the NJWHL.  Accordingly, employees are entitled to be paid at least minimum wage for all hours worked in each workweek.

61.     Pursuant to the NJWHL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.

62.     Although the NJWHL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here.

63.     Plaintiff Maldonado and the class members are victims of uniform and employer-based compensation policies.   Specifically, Defendant Borgata claimed a tip credit without satisfying the FLSA's tip credit notice provisions.  Thus, Defendants are not entitled to claim a tip credit for any hours worked during the collective period.

64.     As such Plaintiff Maldonado and all similarly situated employees are entitled to the full federal minimum wage for each hour worked during the collective period.  In addition, Plaintiffs are entitled to be paid overtime based on the federal minimum wage rate times 1.5 without regard to the tip credit for each hour worked over 40 during the collective period.

65.     These amounts represent wages due Plaintiff Maldonado and all similarly situated employees within the meaning of the NJWPL. N.J. Stat. Ann. § 34:11-4.10.

66.     Plaintiff Maldonado and the class members are entitled to damages equal to the full amount of wages due (including unpaid minimum, regular and overtime wages due) during the relevant time period (up to six years preceding the filing of this complaint, plus periods of equitable tolling), plus liquidated damages up to 200 percent of the wages due, costs and reasonable attorney's fees.

67.     Plaintiff Maldonado and the class members are also entitled to an award of pre-judgment and post-judgment interest at the applicable legal rate.

## ALLEGATIONS APPLICABLE TO MARYLAND STATE LAW CLAIMS

## (COUNTS III AND IV)

68.     At all times relevant, Plaintiff Day and the class members have been entitled to the rights, protections, and benefits provided under the MWHL and MWPCL.  Md. Code Ann., Lab. & Empl. §§ 3-401, *et seq*.; Md. Code Ann., Lab. & Empl. §§ 3-501, *et seq*.

69.     The MWHL regulates, among other things, the payment of minimum wage and overtime wages by employers.  Md. Code Ann., Lab. & Empl. §§ 3-413, 3-415, 3-420.

70.     The MWHL should be construed in accordance with its provisions and those of the FLSA.  *See Rivera v. Mo's Fisherman Exch., Inc.*, No. ELH-15-1427, 2018 WL 2020423 at *11 (D. Md. May 1, 2018) ("The MWHL is the 'State parallel' of the FLSA.").

71.     Plaintiff Day and the class members are covered, non-exempt employees within the meaning of the MWHL.  Accordingly, they are entitled to be paid at least minimum wage for all hours worked in each workweek.  Md. Code Ann., Lab. & Empl. § 3-413.

72.     Pursuant to the MWHL, employees are also entitled to be compensated at a rate of not less than one and one-half times the regular rate at which such employees are employed for all work performed in excess of 40 hours in a workweek.  *Id*. at §§ 3-415, 3-420.

73.     Although the MWHL contains some exceptions (or exemptions) from the minimum wage and overtime pay obligations, none of those exceptions (or exemptions) applies here.

74.     The MWPCL requires employers to promptly pay employees their wages, including "all compensation that is due to an employee for employment."  *Id*. at § 3-501(c)(1). The MWPCL does not focus on the amount of wages payable but rather the duty to pay whatever wages are due on a regular basis and to pay all that is due following termination of the employment.

75.     Both the MWHL and MWPCL authorizes an employee to bring an action against an employer to recover unpaid wages due.  *Id*. at §§ 3-427, 3-507.2(a).

76.     During all times relevant to this action, Defendant MGM was the "employer" of Plaintiff Day and the class members within the meaning of the MWHL and MWPCL. *Id*. at §§ 3-401(b), 3-501(b).

77.     During all times relevant to this action, Plaintiff Day and the class members were Defendant MGM's "employees" within the meaning of the MWHL and MWPCL.

78.     Under the MWHL, Plaintiff Day and the class members are entitled to damages equal to: (1) the difference between the wage paid to the employee and the wage required; (2) an additional amount equal to the difference between the wage paid to the employee and the wage required as liquidated damages; and (3) reasonable counsel fees and other costs. *Id*. at § 3-427(d)(1)(i)-(iii).

79.     Under the MWPCL, Plaintiff Day and the class members are entitled to damages equal to: (1) an amount not exceeding 3 times the wage due; and (2) reasonable counsel fees and other costs. *Id*. at § 3-507.2(b).

## <u>COUNT I - FLSA</u>

**Arising Out of Defendants' Failure to Comply with Tip Credit Notice Requirements**

**(Brought Against Defendants by Plaintiffs,
On Behalf of Themselves and Others Similarly Situated)**

80.     Plaintiffs re-allege the allegations set forth above.

81.     Defendants violated the FLSA by failing to pay Plaintiffs and all others similarly situated minimum wages for all hours worked in a workweek.

82.     Specifically, Defendants paid Plaintiffs and others similarly situated below the federal minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the federal minimum wage.

16

83.     In particular, Plaintiffs and other similarly situated tipped employees were not informed, in advance of Defendants' use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendants, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

84.     Defendants failed to comply with the notification requirements set forth within the express language of the FLSA and supporting federal regulations.  29 U.S.C. § 203(m)(2); 29 C.F.R. § 531.59(b).

85.     As Defendants has failed to properly inform Plaintiffs and other similarly situated tipped employees of the required tip credit provisions and are not entitled to claim a tip credit, Defendants have willfully violated state and/or federal law by failing and refusing to pay all federal minimum wages due to Plaintiffs and all other similarly situated employees.

86.     Defendants' practice was to unlawfully and willfully fail to comply with the requirements for their entitlement to a tip credit and therefore, Plaintiffs and the similarly situated tipped employees were not properly paid federal minimum wages pursuant to the FLSA.

87.     WHEREFORE, on Count I of this Second Amended Class and Collective Action Complaint, Plaintiffs and all similarly situated employees demand judgment against Defendants and pray this Court:

        a.     Issue notice to all similarly situated employees of Defendants informing them of their right to file consents to join the FLSA portion of this action;

b.      Award Plaintiffs and all similarly situated employees damages for unpaid minimum wages under 29 U.S.C. § 216(b);

c.      Award Plaintiffs and all similarly situated employees liquidated damages under 29 U.S.C. § 216(b);

d.      Award Plaintiffs and all similarly situated employees pre-judgment and post-judgment interest as provided by law;

e.      Award Plaintiffs and all similarly situated employees attorneys' fees and costs under 29 U.S.C. § 216(b); and

f.      Award Plaintiffs and all similarly situated employees such other relief as the Court or a jury deems fair and equitable.

**<u>COUNT II – New Jersey Wage Payment Law (Unpaid Wages)</u>**

**Arising Out of Defendant Borgata's Failure to Comply with Tip Credit Notice Requirements**

**(Brought Against Defendant Borgata by Plaintiff Maldonado Individually and on Behalf of All Others Similarly Situated)**

88.     Plaintiff Maldonado, on behalf of herself and all others similarly situated, re-alleges and incorporates by reference the paragraphs above as if they were set forth again herein.

89.     Defendant Borgata violated NJWPL, by failing to timely and properly pay Plaintiff Maldonado and all other similarly situated employees for all compensable hours worked at the legal and applicable wage rates for all hours worked in a workweek.  Specifically, as described above, all putative class members are entitled to the protections of the FLSA, including its tip credit notice protections.  By failing to provide the required tip credit notice within the meaning of the FLSA, Defendant Borgata failed to pay Plaintiff Maldonado and all other similarly situated employees minimum wage under the FLSA.  These unpaid minimum wages are wages due within the meaning of the NJWPL.

90.     Defendant Borgata's practice was to unlawfully and willfully fail to properly pay its hourly employees for all hours worked.  These policies resulted in Defendant Borgata failing to pay Plaintiff Maldonado and all other similarly situated employees all earned overtime wages. In addition, these policies resulted in Defendant Borgata failing to pay Plaintiff Maldonado and all other similarly situated employees minimum wages for all hours worked.

91.     WHEREFORE, on Count II of this Second Amended Class and Collective Action Complaint, Plaintiff Maldonado and the class members demand judgment against Defendant Borgata and pray this Court:

a.      Certify the state law claim set forth in Count II above as a class action pursuant to Fed. R. Civ. P. 23;

b.      Award Plaintiff Maldonado and class members damages equal to the full amount of wages due (including unpaid minimum, regular and overtime wages due) during the relevant time period (up to six years preceding the filing of this complaint, plus periods of equitable tolling), plus liquidated damages up to 200 percent of the wages due, costs and reasonable attorney's fees;

c.      Award Plaintiff Maldonado and class members pre-judgment and post-judgment interest as provided by law; and

d.      Award Plaintiff Maldonado and class members such other relief as the Court deems fair and equitable.

## COUNT III – MWHL

**Arising Out of Defendant MGM's Failure to Comply with Tip Credit Notice Requirements**

**(Brought Against Defendant MGM by Plaintiff Day,
On Behalf of Herself and Others Similarly Situated)**

92.     Plaintiff Day re-alleges the allegations set forth above.

93.     Defendant MGM violated the MWHL by failing to pay Plaintiff Day and all others similarly situated minimum wages for all hours worked in a workweek.

94.     Specifically, Defendant MGM paid Plaintiff Day and others similarly situated below the state or county minimum wage rate without complying with the "tip credit" rules required for an employer to pay less than the state or county minimum wage.

95.     In particular, Plaintiff Day and other similarly situated tipped employees were not informed, in advance of Defendant MGM's use of the tip credit, of: (1) the additional amount by which the wages of the tipped employee are increased on account of the tip credit claimed by Defendant MGM, which amount may not exceed the value of the tips actually received the employee; (2) that all tips received by the tipped employee must be retained by the employee except for a valid tip pooling arrangement limited to employees who customarily and regularly receive tips; and (3) that the tip credit shall not apply to any employee who has not been informed of these requirements in this section.

96.     Defendant MGM failed to comply with the notification requirements set forth within the express language of the MWHL.  Md. Code Ann., Lab. & Empl. § 3-419(a)(1).

97.     As Defendant MGM has failed to properly inform Plaintiff Day and other similarly situated tipped employees of the required tip credit provisions and is not entitled to claim a tip credit, Defendant MGM has willfully violated state law by failing and refusing to pay all state or county minimum wages due to Plaintiff and all other similarly situated employees.

98.     Defendant MGM's practice was to unlawfully and willfully fail to comply with the requirements for its entitlement to a tip credit and therefore, Plaintiff Day and the similarly situated tipped employees were not properly paid state or county minimum wages pursuant to the MWHL.

99.     WHEREFORE, on Count III of this Second Amended Class and Collective Action Complaint, Plaintiff Day and all similarly situated employees demand judgment against Defendant MGM and pray this Court:

a.      Certify the state law claim set forth in Count III above as a class action pursuant to Fed. R. Civ. P. 23;

b.      Award Plaintiff Day and class members damages for all wages due under Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(i);

c.      Award Plaintiff Day and all class members an additional amount equal to all wages due as liquidated damages under Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(ii);

d.      Award Plaintiff Day and class members pre-judgment and post-judgment interest as provided by law;

e.      Award Plaintiff Day's and class members' counsel fees and costs as allowed by Md. Code Ann., Lab. & Empl. § 3-427(d)(1)(iii); and

f.      Award Plaintiff Day and class members such other relief as the Court or a jury deems fair and equitable.

### COUNT IV – MWPCL (Unpaid Wages)

**Arising Out of Defendant Borgata's Failure to Comply with Tip Credit Notice Requirements**

**(Brought Against Defendant MGM by Plaintiff Day, on Behalf of Herself and Others Similarly Situated)**

100.    Plaintiff Day re-alleges the allegations as set forth above.

101.    This MWPCL claim arises out of Defendant MGM's failure to comply with the MWHL's tip credit notice requirements described above.  These amounts are wages due within the meaning of the MWPCL.

102.    Because Defendant MGM was not entitled to take a tip credit against the minimum wages of its tipped employees, Defendant MGM violated the MWPCL by failing to timely pay such tipped employees all wages due during their employment and/or after their termination.

103.    Defendant MGM's violations of the MWPCL were willful and intentional, and not the result of a bona fide dispute.

104.    WHEREFORE, on Count IV of this Second Amended Class and Collective Action Complaint, Plaintiff Day and the class members demand judgment against Defendant MGM and pray this Court:

    a.    Certify the state law claim set forth in Count IV above as a class action pursuant to Fed. R. Civ. P. 23;

    b.    Award Plaintiff Day and all similarly situated employees an amount equal to three times all wages due under Md. Code Ann., Lab. & Empl. § 3-507.2(b);

    c.    Award Plaintiff Day and class members pre-judgment and post-judgment interest as provided by law;

    d.    Award Plaintiff Day's and class members' counsel fees and costs as allowed by Md. Code Ann., Lab. & Empl. § 3-507.2(b); and

    e.    Award Plaintiff Day and class members such other relief as the Court or a jury deems fair and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a jury trial on all the issues so triable.

Dated:  November 12, 2021    s/ R. Andrew Santillo

          **WINEBRAKE & SANTILLO, LLC**
          R. Andrew Santillo, Esq. (NJ ID #025512004)
          Mark J. Gottesfeld, Esq. (NJ ID #027652009)
          Twining Office Center, Suite 211
          715 Twining Road
          Dresher, Pennsylvania 19025
          Telephone: 215-884-2491
          Facsimile: 215-884-2492
          Email:  asantillo@winebrakelaw.com
          Email:  mgottesfeld@winebrakelaw.com

          **STUEVE SIEGEL HANSON LLP**
          s/ Alexander T. Ricke
          George A. Hanson (admitted *pro hac vice*)
          Alexander T. Ricke (admitted *pro hac vice*)
          460 Nichols Road, Suite 200
          Kansas City, Missouri 64112
          Telephone: 816-714-7100
          Facsimile: 816-714-7101
          Email:  hanson@stuevesiegel.com
          Email:  ricke@stuevesiegel.com

          **McCLELLAND LAW FIRM, P.C.**
          Ryan L. McClelland (admitted *pro hac vice*)
          Michael J. Rahmberg (admitted *pro hac vice*)
          The Flagship Building
          200 Westwoods Drive
          Liberty, Missouri 64068
          Telephone: 816-781-0002
          Facsimile: 816-781-1984
          Email:  ryan@mcclellandlawfirm.com
          Email:  mrahmberg@mcclellandlawfirm.com

          **COUNSEL FOR PLAINTIFFS**